573 A.2d 80

**Joseph Greenfield WILLS**

v.

**STATE of Maryland.**

**No. 1253, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 7, 1990.

Gary S. Bernstein (William H. Murphy, Jr., on brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Richard A. Cooper, State's Atty., for Charles County, La Plata, on brief), for appellee.

Argued before GARRITY, ALPERT and KARWACKI, JJ.

KARWACKI, Judge.

Joseph Greenfield Wills, the appellant, was convicted by a jury in the Circuit Court for Charles County of distributing cocaine. The court sentenced him to ten years imprisonment. He seeks reversal of that judgment, contending that the court erred in permitting the State to cross-examine him pertaining to his post-arrest silence.

At trial, Detective William Winters of the Charles County Sheriff's Department testified that, while working undercover at 7:49 p.m. on June 17, 1988, he and two police informants, Deanna Carmody and Elizabeth Butler, went to the home of appellant in order to purchase cocaine. Winters related that once inside the home Carmody and Butler left the room while he purchased three bags of crack cocaine, which appellant produced from a zippered pouch. After this purchase, Carmody and Butler returned to the room, and the three left the premises and met with a police backup team. Winters also testified that appellant's wife

was in the home when the purchase was made. Carmody and Butler testified to essentially the same facts.

Appellant's wife testified that appellant was not home on the evening of June 17, 1988, and that no one came to their home that night. Robert A. Jones, a friend of appellant, testified that on the evening of June 17, 1988, he met appellant at the Old Dominion automobile drag racing track in Manassas, Virginia, "roughly around quarter to seven or seven o'clock." He stated that he left the racetrack at "about quarter after 11 or 11:30" and that appellant was still there.[1]

Appellant testified in his own defense. He denied selling cocaine to Winters on June 17, 1988, explaining that on that evening he was at the Old Dominion Racetrack from approximately 5:00 p.m. until after midnight. On cross-examination, the following exchange took place:

STATE'S ATTORNEY: You never told the police that you were drag racing on June 17th, did you?

DEFENSE COUNSEL: Objection.

THE COURT: Overruled.

APPELLANT: No. I did not tell the police I was drag racing.

Corporal William Brown and Detective Dale Scheider, of the Charles County Sheriff's Department, were called as rebuttal witnesses by the State. Both testified that they were in an unmarked police car as members of the backup team working with Detective Winters on June 17, 1988. Both stated that they saw appellant standing outside his home a few minutes after hearing on their police radio that Winters, Carmody and Butler had left appellant's home.

The record reveals that appellant was not charged with selling cocaine on June 17, 1988, until he was arrested 11 days later. That arrest was pursuant to a warrant issued

---

1. Prior to trial, both of these alibi witnesses were disclosed to the State by appellant in response to the State's request for discovery pursuant to Rule 4–263(d)(3).

on June 27, 1988 at 4:20 p.m. by a district court commissioner on the application of Detective Winters. The warrant was executed at 12:50 a.m. on the following morning. Appellant was detained at the Charles County Detention Center until he was presented to a district court commissioner at 9:45 a.m. that morning and released on bail. The record does not reflect that he was given *Miranda* [2] warnings or interrogated while in police custody.

Appellant challenges, on two grounds, the prosecution's attempt to impeach his alibi by inquiring into why he did not assert it when first charged with the crime of which he stands convicted.[3] He asserts that by permitting this cross-examination concerning his silence in face of the accusations made against him the court denied him the fundamental fairness guaranteed an accused under the due process clause of the Fourteenth Amendment. He also contends that under the law of this State, the evidence was inadmissible. We shall discuss these arguments in turn.

■ The Supreme Court was confronted with this interplay between the law of evidence and a criminal defendant's constitutional protection from compelled self-incrimination in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). The court there held that it was fundamentally unfair and a deprivation of due process to allow an arrested person's silence to be used to impeach his explanation of his allegedly criminal conduct offered at his trial where he had remained silent after receiving *Miranda* warnings.[4] While

---

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** The State argues that the issues are not preserved because appellant did not move to strike his answer to the inquiry. It posits that the question posed to appellant was proper and appellant's only objection was to the answer. We disagree. It is obvious that the prosecutor made the inquiry in the expectation of the answer which was given. *Ross v. State,* 276 Md. 664, 672–73, 350 A.2d 680 (1976).

**4.** Interestingly, the Court of Appeals reached the same conclusion two years earlier. *Younie v. State,* 272 Md. 233, 239–45, 322 A.2d 211 (1974).

the Court's ruling was based on its application of the Due Process Clause of the Fourteenth Amendment, the following passage from Justice Powell's majority opinion demonstrates that the Court also questioned the probative value of a defendant's post-arrest silence:

> Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. Moreover, while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial.

*Id.*, 426 U.S. at 617–18, 96 S.Ct. at 2244–45, 49 L.Ed.2d at 97–98 (citation and footnote omitted). Four years later in *Jenkins v. Anderson*, 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), the Court was asked to expand *Doyle* to prohibit the use for impeachment of a defendant's silence prior to arrest. The Court refused, explaining that because "[t]he failure to speak occurred before the petitioner was taken into custody and given *Miranda* warnings ... the fundamental unfairness present in *Doyle* is not present in this case." *Id.*, 426 U.S. at 240, 100 S.Ct. at 2130, 65 L.Ed.2d at 96. Still later, in *Fletcher v. Weir*, 455 U.S. 603, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982), the Court was faced with the same question that is presented in the instant case: whether to allow a prosecutor to impeach a defendant with his post-arrest silence where there is no evidence that he was ever given *Miranda* warnings. In a *per curiam* opinion, the Court limited the *Doyle* holding to those cases where the defendant's silence followed *Miranda* warnings and held that the use of a defendant's post-arrest pre-*Miranda* warning, silence does not offend due process if offered "[i]n the absence of the sort of affirmative assur-

ances embodied in the *Miranda* warnings." *Id.*, 455 U.S. at 607, 102 S.Ct. at 1312, 71 L.Ed.2d at 494. The states, the Court concluded, are entitled "to leave to the judge and jury under its own rules of evidence the resolution of the extent to which post-arrest silence may be deemed to impeach a criminal defendant's own testimony." *Id.* Thus, the use of a criminal defendant's post-arrest, pre-*Miranda* warning, silence to impeach does not offend the due process clause of the Fourteenth Amendment; however, each state must determine whether its own rules of evidence preclude the admission of this evidence.

Since *Fletcher*, a number of our sister states have ruled on this question, but no consensus has emerged. Most of the state courts that have adopted *Fletcher* and allow the admission of this evidence either do so with little or no discussion of the merits of their position, *Lanham v. State*, 184 Ga.App. 554, 362 S.E.2d 131, 132 (1987); *Beach v. State*, 512 N.E.2d 440, 442–43 (Ind.App.1987); *State v. Brown*, 128 N.H. 606, 517 A.2d 831, 835–36 (1986), or because they find no authority in that state's common law for adopting a broader interpretation of due process than that offered by the Supreme Court. *People v. Givens*, 135 Ill.App.3d 810, 90 Ill.Dec. 504, 482 N.E.2d 211, 221 (1985) ("Illinois has consistently followed the Supreme Court of the United States in situations concerning the application of a more restrictive view of an individual's constitutional rights than previously enjoyed"); *State v. Hunt*, 72 N.C.App. 59, 323 S.E.2d 490, 492 (1984) ("We are not aware of any decision of the Supreme Court of North Carolina that would place more or heavier burdens on the State's right to cross-examine a testifying defendant than those imposed by the Supreme Court of the United States."). Only Wisconsin has decided to admit this evidence in light of its own principles of evidence. The Supreme Court of Wisconsin did so in *State v. Sorenson*, 143 Wis.2d 226, 421 N.W.2d 77 (1988), citing the need to prevent defendants from having their silence excluded when it was not induced by *Miranda* warnings. The court explained:

A contrary position would allow defendants, who have not been induced by government action to remain silent, to wrongfully manipulate the rules of evidence, and cripple the state's ability to address all the evidence presented by the defendant at trial. Moreover, once a defendant elects to take the stand, any comment by the prosecution regarding defendant's pre-*Miranda* silence may be explored and explained by defendant's own counsel on redirect. This protection more than adequately shields against any potentially misleading inference which might be drawn from the prosecution's references.

*Id.,* 421 N.W.2d at 90.

Of those courts that exclude evidence of a defendant's post-arrest, pre-*Miranda* warning silence, a majority do so because they construe their state constitutions as providing criminal defendants with greater protection than the Federal Constitution. *Nelson v. State,* 691 P.2d 1056, 1059 (Alaska App.1984) ("We therefore conclude that under Article I, § 9 of the Alaska Constitution, a person who is under arrest for a crime cannot normally be impeached by the fact that he was silent following his arrest."); *People v. Jacobs,* 158 Cal.App.3d 740, 750, 204 Cal.Rptr. 849 (1984) ("We hold that under the circumstances of this case questioning appellant on cross-examination about his silence occurring both during and following his arrest violated appellant's privilege against self-incrimination under California Constitution, article I, section 15."); *Lee v. State,* 422 So.2d 928, 930 (Fla.App.1982) ("the right to remain silent is entitled to greater protection in our state than that required by the United States Supreme Court"); *Sanchez v. State,* 707 S.W.2d 575, 578 (Tex.Cr.App.1986) (Admission of this evidence "would violate the accused's right to be free from compelled self-incrimination under Art. I, § 10, Texas Constitution.").

The courts of two states that have decided to exclude this evidence did so because they found it lacking in probative value. The Court of Appeals of Washington recognized that even in the absence of *Miranda* warnings, an accused

may remain silent solely because he is aware of his Fifth Amendment rights. Therefore,

> [t]here is no logic in protecting a defendant advised of his rights and not an unadvised defendant. Both defendants are exercising the same constitutional right. The arrest itself is governmental action which enshrouds a defendant with the constitutional right to remain silent. A suspect's fears upon arrest, combined with the widespread knowledge of the right to remain silent, will often result in the defendant remaining silent.

*State v. Davis*, 38 Wash.App. 600, 686 P.2d 1143, 1146 (1984). The court also noted the practical effect that *Fletcher* might have.

> Adopting the position advanced by the State might also encourage police to delay reading *Miranda* warnings or to dispense with them altogether to preserve the opportunity to use the defendant's silence against him. A constitutional guarantee designed to protect society from improper police conduct becomes meaningless when it may be obviated by law enforcement officials improperly withholding the *Miranda* warnings.

*Id.* The Supreme Court of Pennsylvania also expressed concern about the probative value of post-arrest, pre-*Miranda*, silence in ruling it inadmissible. In *Commonwealth v. Turner*, 499 Pa. 579, 454 A.2d 537, 539 (1982), the court said "we do not think it sufficiently probative of an inconsistency with [a defendant's] in-court testimony to warrant allowance of any reference at trial to the silence." Furthermore,

> We do not think that the accused should be protected only where there is governmental inducement of the exercise of the right. We acknowledge that this position is more restrictive than that taken by the United States Supreme Court in *Fletcher v. Weir, supra.* However, we decline to hold, under the Pennsylvania Constitution, that the existence of *Miranda* warnings, or their absence, affects

a person's legitimate expectation not to be penalized for exercising the right to remain silent.

*Id.* 454 A.2d at 540.

 The foregoing survey demonstrates that the issue presented in the case *sub judice* may be decided either as a matter of state constitutional law or based on rules of evidence. But "nothing is better settled than the principle that courts should not decide constitutional issues unnecessarily," *State v. Raithel,* 285 Md. 478, 484, 404 A.2d 264 (1979). Mindful of this principle, as well as the Supreme Court's directive that this issue should be decided on the basis of each state's "own rules of evidence," *Fletcher,* 455 U.S. at 607, 102 S.Ct. at 1312, 71 L.Ed.2d at 494, we hold that evidence of an accused's post-arrest, pre-*Miranda* warning, silence for impeachment is inadmissible because the probative value, if any, of such evidence, is clearly outweighed by its potential for unfair prejudice.

As the Supreme Court has noted in exercising its supervisory authority over the admission of evidence in the federal district courts, "[i]n most circumstances, silence is so ambiguous that it is of little probative force." *United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99, 104 (1975). Silence is considered probative, however, in response to an assertion which "the party would, under all the circumstances, naturally be expected to deny." *Miller v. State,* 231 Md. 215, 218, 189 A.2d 635 (1963). This is referred to as a "tacit" admission. Wigmore, *Evidence,* (Chadbourn Rev.1972); McCormick, *Evidence,* §§ 160, 270 (3rd ed. 1984); McLain, *Maryland Evidence,* § 801(4).3 at 312 (1987). Such an admission is only to be received into evidence when "the statement and the failure to rebut it occurred in an environment and in the presence of actors such that a reply might naturally have been expected." *Ewell v. State,* 228 Md. 615, 619, 180 A.2d 857 (1962). We do not believe that such an environment exists when a person is arrested for a crime.

At the time of arrest and during custodial interrogation, innocent and guilty alike—perhaps particularly the inno-

cent—may find the situation so intimidating that they choose to stand mute. A variety of reasons may influence that decision. In these often emotional and confusing circumstances, a suspect ... may have felt there was no need to reply. He may have maintained silence out of fear or unwillingness to incriminate another. Or the arrestee may simply react with silence in response to the hostile and perhaps unfamiliar atmosphere surrounding his detention.

*Hale*,[5] 422 U.S. at 177, 95 S.Ct. at 2133, 45 L.Ed.2d at 105. Moreover, as the Court of Appeals of Washington observed, *supra*, knowledge of the right to remain silent is widespread and it is likely that an accused's silence—even where *Miranda* warnings have not been administered—is merely an invocation of the right. Therefore, since "[s]ilence may be motivated by many factors other than a sense of guilt or lack of an exculpatory story," McCormick, *Evidence*, § 270 at 800 (1984 ed.), it carries little, if any, probative value.

But "[n]ot only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility, ... it also has a significant potential for unfair prejudice." *Hale*, 422 U.S. at 180, 95 S.Ct. at 2138, 45 L.Ed.2d at 107. *See also Younie v. State*, 272 Md. 233, 241–42, 322 A.2d 211 (1974) (quoting *Burko v. State*, 19 Md.App. 645, 652, 313 A.2d 864 (1974)) (Allowing "the police to testify that when the defendant had been accused he did not answer would have a devastating effect upon the defense.").

In view of the potential for unfair prejudice to the defendant and the likelihood that an arrestee's silence is motivated by a reason other than consciousness of guilt, we hold that it is error for the court to admit evidence of a criminal defendant's post-arrest, pre-*Miranda* warning, silence for impeachment purposes.

---

**5.** While the issue before the Supreme Court in *Hale* was the admissibility of an arrestee's post-*Miranda* warnings silence, we think the language quoted above applies equally as well to the period before an arrestee is read his *Miranda* rights.

■ Therefore, the court erred in allowing the State to question appellant as to whether he advised the police of his alibi when he was arrested and accused of cocaine distribution, and this error cannot be deemed harmless. The sole theory of appellant's defense was his àlibi. In addition to his own testimony, the appellant produced two other witnesses that testified that he was not at his home when he allegedly sold cocaine to Detective Winters. In this context it cannot be said that the appellant suffered no prejudice from the State's cross-examination concerning his post-arrest silence. *Dorsey v. State*, 276 Md. 638, 653, 350 A.2d 665 (1976); *Younie v. State, supra,* 272 Md. at 245–49, 322 A.2d 211; *Garrett v. State,* 59 Md.App. 97, 107, 474 A.2d 931 (1984), *cert. denied,* 300 Md. 483, 479 A.2d 372 (1984).

JUDGMENT REVERSED; CASE REMANDED FOR NEW TRIAL.

COSTS TO BE PAID BY CHARLES COUNTY.