639 A.2d 180

**Tracy Irving WILLIAMS**

v.

**STATE of Maryland.**

**No. 1096, September Term, 1993.**

Court of Special Appeals of Maryland.

April 5, 1994.

712

**714**

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr. Atty. Gen., Baltimore, and Michael C. Maloney, State's Atty. for Dorchester County, Cambridge, on the brief), for appellee.

Argued before MOYLAN, CATHELL and MOTZ, JJ.

MOYLAN, Judge.

The appellant, Tracy Irving Williams, was convicted by a Dorchester County jury, presided over by Judge Donald F. Johnson, of possession with intent to distribute cocaine and related offenses. On this appeal, he raises the contentions:

1) that Judge Johnson erroneously permitted a prior conviction to be used to impeach the credibility of a defense witness without engaging in the balancing test required by Maryland Rule 1–502;

2) that Judge Johnson erroneously allowed the prosecutor to question the appellant about his failure to bring an alleged alibi promptly to the attention of the authorities;

3) that Judge Johnson erroneously allowed the prosecutor to question a defense alibi witness about why she did not more promptly contact the police or the State's Attorney;

4) that Judge Johnson erroneously sustained the State's objection to proffered defense testimony on the ground that it was hearsay; and

5) that Judge Johnson erroneously denied his motion for a mistrial during the testimony of Patrolman Doyle.

### Nonpreservation

■ The short answer to the appellant's first contention is that the argument he now makes was never made below and the issue is, therefore, not preserved for appellate review. During the cross-examination of defense witness Lester Demby, the State sought to impeach his testimonial credibility by showing, over objection, that the witness had been convicted of theft. After having objected, defense counsel argued strenuously that theft is not an impeachable offense. In this opinion, it is unnecessary to point out that theft is a *crimen falsi* and a

proper predicate for testimonial impeachment because that argument is not, on appeal, any longer being pursued by the appellant. *But see Beales v. State,* 329 Md. 263, 270, 619 A.2d 105 (1993); *Wicks v. State,* 311 Md. 376, 382, 535 A.2d 459 (1988).

On appeal, the appellant now advances the very different argument that even when the conviction in question is a proper instrumentality for testimonial impeachment, it still may not be used for that purpose unless and until the trial judge balances the value of the evidence against the danger of unfair prejudice, as required by Maryland Rule 1–502(a). Without intimating for a moment that we think the trial judge abused his discretion in this regard, the short answer to the contention is that the appellant never raised the issue of balancing below. Nothing with respect to such balancing was brought to the judge's attention. No ruling was made in that regard. We have no idea whether, in the privacy of his conscience, the judge did or did not engage in any balancing. Quite simply, the issue was never raised. What was preserved is not being pursued; what is being pursued was not preserved.

### A Second Instance of Nonpreservation

The appellant's second contention is that Judge Johnson erroneously permitted the State to inquire into the appellant's post-arrest but pre-*Miranda* silence. Although this would not offend constitutional due process under *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), it would offend the Maryland law of evidence under our decision in *Wills v. State,* 82 Md.App. 669, 678, 573 A.2d 80 (1990). The appellant, however, failed to preserve the point for appellate review. The critical exchange was:

[Prosecutor]: Did you tell the police officers that Miss Jones could vouch for your whereabouts?

[Appellant]: No, I haven't. I told my lawyer.

[Prosecutor]: Did you tell the State's Attorney's Office?

[Appellant]: No.

[Defense Counsel]: Objection, Your Honor; the defendant has no necessity of talking to the police or the State.

The Court: I realize that. The objection is overruled.

■ The appellant failed to object after the first question in this regard was asked. He answered the question and the answer was in the record without objection. Even when the prosecutor asked a second question bearing on the same subject, no objection was immediately lodged and the answer came in. It was only then that the appellant objected. The appellant, however, never moved to have the answer stricken from the record. As Judge Chasanow explained for the Court of Appeals in *Bruce v. State,* 328 Md. 594, 628–629, 616 A.2d 392 (1992), the preservation requirements for this sort of objection are very strict. The Court of Appeals there pointed out that, if the objectionable nature of the question is clear, the objection must be immediately forthcoming before the answer is given. *Bruce v. State* explained, 328 Md. at 628, 616 A.2d at 409:

> The Maryland Rules provide, however, that "[a]n objection to the admission of evidence shall be made at the time the evidence is offered or as soon thereafter as the grounds for objection become apparent. Otherwise, the objection is waived...." Md.Rule 4–323(a). Therefore, "[i]f opposing counsel's question is formed improperly or calls for an inadmissible answer, *counsel must object immediately. Counsel cannot wait to see whether the answer is favorable before deciding whether to object."* 5 L. McLain, *Maryland Evidence* § 103.3, at 17 (1987); *Moxley v. State,* 205 Md. 507, 515, 109 A.2d 370, 373 (1954). (emphasis supplied).

■ It is only when an objectionable answer is given unexpectedly in response to an unobjectionable question that the offended party has slightly more leeway. Even in such a circumstance, however, it is required that the offended party move immediately to strike the objectionable answer. The Court of Appeals explained, 328 Md. at 628–629, 616 A.2d at 409:

The strict rule that an objection made at an inappropriate time will waive the objection, however, will give way when "the question is unobjectionable, but the answer includes inadmissible testimony which was unforeseeable from the question." 5 L. McLain, *Maryland Evidence* § 103.3, at 18; *Moxley,* 205 Md. at 515, 109 A.2d at 373; *see also Klecka v. State,* 149 Md. 128, 132, 131 A. 29, 30 (1925) (objection need not be made before answer if " 'the inadmissibility was due not to the subject of the question, but to some feature of the answer.' "). In these circumstances, *objecting counsel may move to strike the witness's response immediately after the grounds for objection have become apparent,* as Rule 4-323(a) provides. (emphasis supplied).

In the *Bruce v. State* case itself, it was held that defense counsel should have spotted immediately that the question was objectionable. The failure to make an immediate objection, therefore, was deemed to be a waiver of the objection. As Judge Chasanow explained, 328 Md. at 629, 616 A.2d at 409:

The question in the instant case, then, is whether or not Bruce's counsel could or should have known from the question that the answer would be objectionable. We believe that *Bruce's counsel should have been able to anticipate the type of answer called for by the question and thus should have been able to perceive grounds for an objection as soon as the question was asked—before the answer.* (emphasis supplied).

In this case, the objection was not immediately made and there is, therefore, nothing preserved for appellate review.

### Impeaching the Alibi Defense

The appellant's third contention is far more interesting. It involved a similar factual circumstance but in a different doctrinal context. Mia Jones was both the girlfriend of the appellant and the mother of his children. The crime for which the appellant was convicted occurred on November 20, 1992. Mia Jones learned on December 15 that the appellant had been charged with the November 20 crime. According to her later trial testimony, she remembered that the appellant had

been at home with her and their two children that entire day and that he did not leave the house. The trial took place on March 2, 1993. After Mia Jones testified to that alibi, the prosecutor inquired as to whether, at any time between December 15 and March 2, she went to the State's Attorney's Office or to the police to notify them that a terrible mistake had been made and that an innocent man was being brought to trial for a crime he could not possibly have committed.

Unlike the situation involved in *Wills v. State*, 82 Md.App. 669, 573 A.2d 80 (1990), where it was the defendant's post-arrest silence that was used adversely against him, the situation with an alibi witness does not involve the balancing of relevance versus the possible compromise of a defendant's right to silence. Indeed, the only argument made, at trial or on appeal, with respect to the cross-examination of Mia Jones has been one asserting exclusively that the inquiry lacked relevance. There has been no argument that prejudice outweighed relevance, but simply that the inquiry was utterly devoid of any relevance whatsoever. We cannot agree.

At the actual trials of criminal defendants, spurious alibis proliferate like weeds. The rarer *bona fide* alibi as often as not precludes the trial. In those cases where a demonstrable mistake has clearly occurred—where an innocent person is being falsely charged—it is not uncommon for a delegation of a lawyer, a clergyman, and a medley of relatives, friends, neighbors and other good citizens "to pound on the door" of the State's Attorney's Office or of the grand jury or of the police department or of all three in order to rectify the miscarriage immediately and to see that all charges are promptly dismissed. That is the instrumentality by which charges sometimes are dropped.

In a criminal trial involving an alibi defense, it is necessary for the fact finder to determine whether to believe or to disbelieve the alibi. It is crucial for the fact finder to decide whether the alibi is of the spurious or of the *bona fide* variety. In resolving that question, knowledge of the circumstances of when and how the "miscarriage of justice" was brought or not

brought to the attention of the authorities clearly would be helpful. Information bearing on that question would be, by definition, relevant.

■ A ruling on the relevance of evidence is "a matter which is quintessentially within the wide discretion of the trial judge." *Best v. State*, 79 Md.App. 241, 259, 556 A.2d 701, *cert. denied*, 317 Md. 70, 562 A.2d 718 (1989). We cannot say that Judge Johnson clearly abused that discretion in deeming the evidence relevant in this case.

■ Indeed, the concocted alibi is generally played close to the vest and does not invite premature exposure or scrutiny. The *bona fide* alibi, by contrast, is frequently trumpeted from the rooftops and welcomes maximal exposure and scrutiny. Surely, these contrasting characteristics have some pertinence in assessing the credibility of an alibi defense. An emerging body of case law recognizes the appropriateness of cross-examining alibi witnesses about their at-times inexplicable (or at least strange) pretrial passivity. The Court of Appeals of New York, in *People v. Dawson*, 50 N.Y.2d 311, 428 N.Y.S.2d 914, 406 N.E.2d 771 (1980), deemed such inquiry to be legitimate. In order for pre-arrest silence to have relevance, however, it is necessary, as pointed out at 428 N.Y.S.2d at 921 n. 4, 406 N.E.2d at 777 n. 4, that the prosecutor:

lay a "proper foundation" for this type of cross-examination by first demonstrating that the witness was aware of the nature of the charges pending against the defendant, had reason to recognize that he possessed exculpatory information, had a reasonable motive for acting to exonerate the defendant and, finally, was familiar with the means to make such information available to law enforcement authorities.

Such a predicate was established in this case. Mia Jones became aware of the charges pending against the appellant on December 15, 1992. She was fully aware of the fact that she possessed absolutely exculpatory information. As the appellant's live-in girlfriend and the mother of his children, moreover, she had a reasonable motive for wishing to exonerate him. A permissible inference could be drawn that she was

familiar with some means to make such information known to law enforcement authorities.

*People v. Dawson* cautioned that "a citizen ordinarily has no legal obligation to volunteer exculpatory information to law enforcement authorities," 428 N.Y.S.2d at 918, 406 N.E.2d at 775, and admonished the prosecutor not "to suggest through his questioning that a witness has a flaw in his moral character or is generally unworthy of belief solely because he or she failed to come forward prior to trial." It also pointed out, on the other hand, that a citizen possessing exonerating information has the opportunity to come forward even if not the obligation to do so and that the failure to come forward may well have evidentiary significance. The New York Court of Appeals explained, 428 N.Y.S.2d at 919, 406 N.E.2d at 775:

It does not necessarily follow, however, that an individual's previous silence may never be used as a basis for impeaching his testimony at trial. Whether or not a private citizen has a legal obligation to volunteer information, there exists a wide variety of situations in which the natural impulse of a person possessing exculpatory information would be to come forward at the earliest possible moment in order to forestall the mistaken prosecution of a friend or loved one. In such situations, the failure to speak up at a time when it would be natural to do so might well cast doubt upon the veracity of the witness' exculpatory statements at trial. In effect, in these situations, the witness' previous silence is a form of conduct that may be analogized to a "prior inconsistent statement" by the witness.

Massachusetts addressed this issue in *Commonwealth v. Brown*, 11 Mass.App.Ct. 288, 416 N.E.2d 218, *cert. denied*, 383 Mass. 891 (1981). In deeming such a line of inquiry both relevant and proper, it observed, 416 N.E.2d at 224:

There are many situations, however, where the natural response of a person in possession of exculpatory information would be to come forward in order to avoid a mistaken prosecution of a relative or a friend. In such situations, the failure of a witness to offer the information when it would

have been natural to do so might well cast doubt on the veracity of the witness' trial testimony. A witness's silence in such circumstances is akin to a witness's "prior inconsistent statement," and, therefore, has probative value. (Citation Omitted.)

The Supreme Court of New Jersey reached a similar result in *State v. Silva*, 131 N.J. 438, 621 A.2d 17 (1993). It reasoned, 621 A.2d at 22:

When an alibi witness has a close relationship with the accused, as with the mother/son relationship in our example or the brother/sister relationship in [*State v.*] *Plowden* [126 N.J.Super. 228, 313 A.2d 802 (1974)] and in this case, a jury can infer that the alibi witness's natural conduct would be to report the alibi to the authorities. The expectation that an alibi witness would communicate with the authorities is higher when the close relative is in jail. In such circumstances, an alibi witness's silence by failing to communicate with the authorities can be considered an inconsistent statement subject to cross-examination designed to reveal fabrication.

Based upon that reasoning, its holding was unequivocal:

We hold that if a witness appears to know of the charges and would naturally be expected to have come forward with the alibi testimony, the witness may be cross-examined about those circumstances of non-disclosure.

621 A.2d at 19. See, however, *United States v. Young*, 463 F.2d 934 (D.C.Cir.1972) (where the Court of Appeals for the District of Columbia held that such a line of inquiry was improper but was, nonetheless, harmless error).

### Hearsay and Nonhearsay

The appellant's fourth contention is that Judge Johnson unduly restricted the testimony of defense witness Lester Demby. The gravamen of the charges against the appellant was that, on the night of November 20, 1992 at approximately 8 P.M., he possessed both cocaine and narcotics paraphernalia. The circumstances were that Patrolman Pat Doyle of the

Cambridge City Police Department was on patrol when he noticed the appellant slowly riding a bicycle and accompanied by two other persons. Officer Doyle knew that there was an outstanding arrest warrant for the appellant. Officer Doyle testified that he had had previous contact with the appellant and recognized him on sight. He approached the appellant "as stealthily as [he] could" and grabbed him by the back of the jacket. He advised him that there was a warrant out for his arrest. Officer Doyle testified that the appellant said, "You don't have nothing for me." With that, he slipped out of the jacket and off the bike and fled westward on foot. The officer was left holding the jacket. The jacket contained an "electronic scales device," used by drug sellers for weighing illegal drugs. The jacket also contained a quantity of what was subsequently determined to be cocaine.

Lester Demby was also present on the street that night and was a direct witness to the attempted "collar" of the cyclist. The central thrust of Demby's testimony was that the man that Officer Doyle attempted to arrest was not the appellant. Demby testified that he knew the appellant well, that the two of them had attended school together years before, and that they had seen each other every few weeks in more recent years. Demby testified that the man on the bicycle was a total stranger to him.

The present flap occurred when Demby attempted to elaborate on the attempted "collar." The defense attempted to bring out that the would-be arrestee said not, as the officer had testified, "You don't have nothing for me," but, rather, "I'm not Tracy Williams." The State's objection was sustained and the would-be arrestee's out-of-court declaration was not received.

The appellant now offers alternative theories as to why the rejection of this evidence was error. Primarily, he argues that the words uttered by the cyclist were nonhearsay, offered not for their truth but simply as one witness's version of the circumstances of the attempted arrest. It was a version, moreover, that contradicted in that regard the version of the

arrest testified to by the officer. We will consider this argument in a moment.

### A. The Excited Utterance as a Hearsay Exception:

▉▉▉ In the alternative, the appellant argues that even if the proffered statement were hearsay, it would qualify for admission as an excited utterance exception to the rule against hearsay. We reject the alternative theory. The argument made to Judge Johnson was that the statement was nonhearsay and was admissible to impeach the officer's credibility. Judge Johnson was never called upon even to consider the question of whether the utterance was excited or otherwise trustworthy. There was no testimony bearing on the declarant's apparent state of mind or emotional demeanor. Absent extreme circumstances, an appellate court would never be in a position to make a determination in this regard in the first instance. It is a theory of admissibility that would have to be advanced by the proponent and would call for both some ancillary fact finding and some ruling by the trial judge. As we explained in Cassidy v. State, 74 Md.App. 1, 19, 536 A.2d 666, 675, cert. denied, 312 Md. 602, 541 A.2d 965 (1988):

> When the alternative ground offered is that of the Excited Utterance Exception to the Hearsay Rule, however, it is required that there be findings of predicate fact. Unless the evidence is so clear and decisive as to compel such findings as a matter of law, an actual finding of fact would be required that there had been a dramatic incident sufficient to generate the requisite excitement. Additionally, an actual finding of fact would be required that the declarant at the time of the utterance was still in the throes of the exciting event and was not capable of reflective narration. For the obvious reason that the trial judge was never called upon to make such findings, no findings in this regard were ever made. At least in the absence of evidence so clear, decisive, and overwhelming as to compel such findings, it is not for us to make them de novo.

See also Colvin–El v. State, 332 Md. 144, 169, 630 A.2d 725 (1993) (Appellate review of an evidentiary ruling, when a

specific objection was made, is limited to the ground assigned); *White v. State*, 324 Md. 626, 640, 598 A.2d 187 (1991) (Argument not made at trial in support of admission of evidence cannot be asserted for the first time on appeal).

We fully agree with the appellant that the circumstances were such that they *might* have given rise to an excited utterance. The admissibility of hearsay, however, turns not on whether an utterance *might have been* excited but on whether the utterance *was* excited. That can, generally speaking, only be determined by the trial judge after hearing the pertinent evidence on the subject of excitement. In this case, no such factual determination was ever made for the obvious reason that the trial judge was never called upon to make such a determination. Might-have-beens don't count.

*B. Nonhearsay:*

The appellant's primary theory, however, is that the utterance in question was nonhearsay and, therefore, needed no special qualification for admissibility. We fully agree. Without suggesting that the words that were said had any significance, we agree that they were part of the circumstances of the attempted "collar." Officer Doyle had one version of those circumstances and Lester Demby had another. Both the prosecution and the defense were entitled to put forth their versions of the attempted arrest with all of its surrounding color. Although the declarant's assertion, "I'm not Tracy Williams" might have been offered by the defense for the truth of the thing asserted (to wit, that the would-be arrestee was not Tracy Williams), that was not the theory of admissibility urged by the defense. That theory was that whereas Officer Doyle testified that he had attempted to arrest A who said *x*, Lester Demby would establish that the officer had attempted to arrest B who said *y*. The difference between the two witnesses as to the words that were spoken was indistinguishable from a difference between them as to the color of the bicycle or as to the direction in which the fugitive ran. The evidence was nonhearsay and should not have been rejected on the ground that it was hearsay.

*C. As Nonhearsay, It Was Irrelevant:*

Having noted that, however, we hasten to hold that the judge was nevertheless right in rejecting the evidence, even if for the wrong reason. Although Lester Demby should not have been prevented from giving his version of what words were spoken on the ground that they were hearsay, the words that were spoken were nonetheless inconsequential. They were irrelevant and, therefore, inadmissible for that reason.

The only issue in this case was that of the identity of the would-be arrestee, who was wearing the jacket that contained the contraband. Officer Doyle said he knew the appellant and that the would-be arrestee was the appellant. Lester Demby said that he knew the appellant and that the would-be arrestee was not the appellant. What was involved was a pure credibility clash between those two witnesses.

The words that were spoken, whatever they were, had no bearing on that credibility clash. Either the appellant or a phantom cyclist could equally plausibly have said, "You don't have nothing for me." Officer Doyle's version of the verbal response to the "collar" would in no way have buttressed Officer Doyle's identification of the cyclist. Conversely, either the appellant or a phantom cyclist could also with equal plausibility have said, "I'm not Tracy Williams." Denying one's identity to avoid an arrest warrant is standard operating procedure. Lester Demby's version of the verbal response to the "collar" would in no way have buttressed his identification testimony of who the cyclist was not.

The only real issue for the jury to determine was that of who the cyclist was, not that of what the cyclist said. Neither the officer's version nor the proffered defense version of what was said was more inherently likely to have been true than the other. The entire question of what was said had no bearing whatsoever on the basic credibility clash, the resolution of which was critical on the issue of the appellant's criminal agency. As nonhearsay (the only purpose for which the evidence was offered), the words, "I'm not Tracy Williams,"

would not have helped to establish that the would-be arrestee, indeed, was not Tracy Williams.

The appellant was, to be sure, on the horns of an evidentiary dilemma. If the proffered utterance had been offered as hearsay, it would have been relevant but incompetent. If, on the other hand, it was offered as nonhearsay, it thereby acquired competence but lost relevance. What the appellant hoped for, of course, was that it would be received by the judge for one purpose but then inevitably considered by the jury for a quite different purpose. Although in the actual trial of cases, such undeserved windfalls regularly occur, there is no legal entitlement to a lucky break.

### The Sanction of the Mistrial

The appellant's final contention is trivial. When Officer Doyle took the stand as the first witness for the State, he was asked, "Can you tell me what happened?" That question was certainly innocuous enough not to offend anyone. Officer Doyle then began his answer:

On November 20, I was advised by Pfc. Mark Lewis of the Cambridge Narcotic Enforcement Team ...

Defense counsel immediately objected, asking not that the reference to the Narcotic Enforcement Team be struck from the record or that a curative instruction to disregard be given the jury but for the ultimate sanction of a mistrial itself. The defense claimed that the reference was "so prejudicial as to render it impossible for [the appellant] at this time to receive a fair trial." If jurors are so easily and incurably seduced, it is high time for serious thought to be given to the abolition of the institution of trial by jury.

Judge Johnson concluded that a declaration of mistrial was not imperative. It is unnecessary to say more than that we emphatically concur. *Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974); *Burks v. State,* 96 Md.App. 173, 189–190, 624 A.2d 1257, *cert. denied,* 332 Md. 381, 631 A.2d 451 (1993).

*JUDGMENTS AFFIRMED;*
*COSTS TO BE PAID BY APPELLANT.*