698 A.2d 1133

**Robert GRIER**

v.

**STATE of Maryland.**

**No. 1321, Sept. Term., 1996.**

Court of Special Appeals of Maryland.

Aug. 28, 1997.

Arthur A. DeLano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Rachel Marblestone Kamins, Assistant Attorney General (J. Joseph Curran, Jr., Attorney general and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for Appellee.

Submitted before MURPHY, C.J., and MOYLAN, J., and ROBERT C. MURPHY, Judge (retired), Specially Assigned.

MURPHY, Chief Judge.

In the Circuit Court for Baltimore City, a jury (Hon. Mabel Houze Hubbard, presiding) convicted Robert Grier, appellant, of attempted robbery with a deadly weapon, mayhem with the intent to disfigure, and related offenses that were merged for purposes of sentencing. Appellant concedes that the evidence was sufficient to persuade the jury that he robbed the victim, used a knife to commit that offense, and cut the victim's hand in the process. Appellant does contend, however, that he is entitled to a new trial because "(t)he trial judge erred in admitting evidence of appellant's post-arrest silence as substantive evidence of guilt." We shall affirm the judgments of the circuit court.

### The Evidence at Issue

The jurors heard Carl Mack testify that he was approached by appellant, who first asked for a cigarette but then produced a knife, attacked him, and made off with his backpack. Although appellant did not testify at trial, the following questions asked by his trial counsel insinuated that he was approached by the victim, who sold him a camera for $10.00 and then attacked him with the knife:

Q. Isn't it true, Mr. Mack, that you offered to sell this camera to Mr. Grier?

A. No.

Q. And that you, in fact, did sell it to him for $10?

A. No.

Q. And that after you sold it to Mr. Grier, you attacked Mr. Grier?

A. That is not true.

Q. And that Mr. Grier bit you on the hand or on the wrist?

A. That's not true.

Q. And then when you tried to lunge at him with the knife, he hit you across the bridge of the nose with the camera that you had just sold him?

A. That's not true.

Q. Is it fair to say that the version of the facts that the police heard was your version of the facts because you were the first one to get to them?

A. I guess that's a fair assumption.

The jurors also heard from Officers Charles Farley and Richard Purtell of the Baltimore City Police Department, who were on patrol when the attack occurred and who arrived on the scene when the victim and appellant appeared to be involved in a fight with one another. As the officers approached the location at which appellant and the victim were struggling with one another, the victim remained at the scene but appellant did not. Officer Farley spoke to the victim while Officer Purtell followed appellant, who walked quickly into an alley and discarded a knife.

The following transpired during Officer Farley's direct examination:

A. When we rode by, I seen them standing right in front of each other arguing. After that point we did a U-turn and came back through. And as we did the U-turn I seen them struggling with each other. The defendant had grabbed the victim. By the time we got down there, and he had let go and starting walking away.

. . . .

Q. When you got down there, who let go and started walking away.

A. The defendant, I mean, yeah, the defendant let go of the victim and starting walking away from us.

Q. And what happened to Mr. Mack?

. . . .

A. He was there. He had—I had approached him and my partner went towards the defendant. I had approached Mr. Mack and I observed—

Q. Was he standing?

A. He was holding his hand when I approached him.

Q. And what, if anything, did you see with his hands?

A. I saw blood all over his hand.

Q. And did you take a look at it?

A. Yes, before I investigated everything, I seen a cut straight down his hand.

Q. Which hand?

A. On his left hand.

Q. Okay. Hold it up and show where the cuts were.

A. It was like straight down here on both fingers (indicating).

Q. And how deep was it?

A. I could actually see the skin was pulled back and I seen like part of the bone.

. . . .

Q. Okay. Now, when you saw the defendant, did you see the defendant walk away?

A. Yes, sir.

Q. Did you see, what, if anything, he was carrying?

A. I seen him with a camera or a carrying case and a camera.

. . . .

Q. Now, did there come a point that the defendant was apprehended?

A. Yes, sir.

. . . .

A. After I called the ambulance, I left Mr. Mack to go with my partner.

Q. And where did your partner go, if you know?

A. He was walking eastbound down on 30th.

Q. Your partner was walking?

A. Well, he was walking right behind the defendant. The defendant was walking very fast.

Q. And where did the defendant go, if you know?

A. When we were going down, he attempted to go through an alley which was a dead end, and then he come back out and tried to go back down the street and that is where we got him.

. . . .

A. [Appellant] walked down, continued eastbound on 30th and it looked like he had thrown something. I didn't know what happened at that time, onto a porch there, and at that time we had got him and put him on the ground and then got into custody.

Q. And did anyone go back up to the porch?

A. Yes sir, my partner did.

Q. You didn't go up there?

A. No.

Q. Did the defendant offer any explanation as to what this was about?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: Sustained.

[PROSECUTOR]: Your Honor, may we approach?

THE COURT: Yes.

(Counsel and the defendant approached the bench and the following ensued:)

[PROSECUTOR]: Judge, I believe that the question does not elicit any hearsay.

THE COURT: What does it elicit?

[PROSECUTOR]: Just whether he offered an explanation or not.

. . . .

THE COURT: Do you expect him to give you an answer about what explanation was offered?

[PROSECUTOR]: No.

THE COURT: You expect him to say no explanation?

[PROSECUTOR]: Uh-huh.

THE COURT: Oh, okay. Well, you have to ask it right.

[PROSECUTOR]: Okay.

THE COURT: Change the phrasing. Okay.

(Counsel and the defendant returned to the trial tables and the following ensued:)

BY [PROSECUTOR]:

Q. Officer, what, if any, explanation did the defendant offer to you ever why he was or why this was taking place?

[DEFENSE COUNSEL]: Objection, Your Honor.

THE COURT: You may answer, sir.

THE WITNESS: He didn't offer any.

THE COURT: The Court does overrule the objection.

The following transpired during Officer Purtell's direct examination:

Q. But you weren't running?

A. No.

Q. Now, why did you stay 20 feet back?

A. Because Mr. Mack had just been stabbed, and I have been trained that with a knife, you keep back at least 21 feet to 20 feet because your weapon if ineffective is someone turns around and comes after you with a knife. For my safety, I didn't want to approach him right off the bat until I knew what was going on.

. . . .

Q. Okay. And what, if anything, did you do with that camera?

A. I asked the defendant if that was his camera.

[DEFENSE COUNSEL]: Objection. Your Honor.

THE COURT: Sustained.

. . . .

## The Inadequate Objection

■ Appellant complains that Judge Hubbard erroneously admitted evidence of his post-arrest silence as "substantive" evidence of his guilt.[1] Once a defendant has been taken into custody for the purpose of prosecuting him or her for a crime, the State is prohibited from introducing evidence that he or she exercised the right to remain silent. *Wills v. State,* 82 Md.App. 669, 677, 573 A.2d 80 (1990); *Robeson v. State,* 39 Md.App. 365, 368–369, 386 A.2d 795 (1978), affd. 285 Md. 498, 403 A.2d 1221 (1979). Pre-arrest silence, however, enjoys no such protection.

■ In this case Officers Farley and Purtell had a duty to investigate the incident they had come upon. To perform that duty, the officers had a right to "accost" and a right to detain briefly both the combatants and any material witnesses. In such situations, while the investigating officers are in the process of determining what happened, and until they are in a position to decide whether anyone should be taken into custody for purposes of prosecution, the statement of a person who is subsequently arrested is not entitled to constitutional protection. *Cornish v. State,* 215 Md. 64, 68, 137 A.2d 170 (1957). The very same rule applies to the pre-arrest silence of a person who is subsequently arrested. *Robeson,* supra, 39 Md.App. at 380, 386 A.2d 795. Thus, the State was entitled to introduce evidence of appellant's pre-arrest silence, and appel-

---

1. He does not challenge the State's right to establish that, as the officers approached the scene of the struggle, he left without offering any explanation and discarded a knife as Officer Purtell followed him.

lant was entitled to a ruling that excluded evidence of his post-arrest silence.

The record shows that Judge Hubbard initially prohibited Officer Farley from testifying that appellant offered no explanation to the investigating officers. The record also shows that, at the bench conference during which the prosecutor sought and obtained permission to establish that appellant never gave any explanation to the officers, appellant's trial counsel failed to request that Judge Hubbard limit the State's "no explanation" evidence to appellant's pre-arrest silence. Having returned to the trial table without asking Judge Hubbard to exclude evidence of appellant's post-arrest silence, appellant's trial counsel interposed a general objection to the question about whether appellant had ever offered an explanation.

 Md. Rule 5–103(a)(1) provides that the erroneous admission of evidence is not preserved for appellate review by a general objection when a specific ground is required by the applicable rule. Before the bench conference concluded, appellant's trial counsel was well aware that the fair and accurate answer to the "explanation" question would generate (1) admissible evidence of appellant's pre-arrest silence, and (2) inadmissible evidence of appellant's post-arrest silence. Under these circumstances, Md. Rule 5–105 required that appellant's trial counsel make a specific request that Judge Hubbard restrict the answer to its proper scope. The general objection was insufficient to preserve the post-arrest silence issue for our review.[2]

 We are also persuaded that evidence of appellant's post-arrest silence was harmless beyond a reasonable doubt. Of the testimony about appellant's conduct from the instant that Officers Farley and Purtell arrived on the scene, his post-arrest silence was inconsequential when compared with his

---

2. At that point in the trial, appellant would have been entitled to an instruction that his post-arrest silence could not be used against him. His trial counsel, however, made no request for that limiting question.

pre-arrest departure from the scene and discarding of the knife while he was being followed by Officer Purtell. Moreover, Judge Hubbard promptly sustained the objection to testimony about Officer Purtell's post-arrest question to appellant. Appellant was simply not prejudiced by evidence that he never offered any postarrest explanation to the investigating officers.

## The Arguments at Issue

During the State's closing argument, the prosecutor's summary of Officer Farley's testimony included the following comments:

Officer Farley, did you at any time receive—or what, if any, explanation did the defendant offer you in regard to this incident? Officer Farley, he had nothing to say.

No objection was interposed to that portion of the argument. During argument for the defense, appellant's trial counsel asserted that, because the officers did not see what preceded the struggle between the appellant and the victim, they merely acted in accordance with the victim's version because it was the "first one" they heard:

The objective evidence would be the physical evidence that would have been seized in this case, the knife, the camera, the money, any witnesses' names that would have been brought in. The subjective evidence is Mr. Mack's story because the officers didn't see anything that Mr. Mack said happened. Mr. Mack said—the last question I asked him, isn't it fair to say that the officers received their version of the facts because you were the first one to get to them. And that's exactly what happened. So the officers throw this against the wall to see what sticks.

The prosecutor's rebuttal argument included the following comments:

And when [appellant] was caught, he offered no reason, nothing. He had nothing to say to the police, nothing to say at all. Not yeah, yeah, that guy attacked me. There was nothing. There was nothing. And all he had to do was give

an explanation like Mr. Mack did over what happened and the details of what happened and let them jive with what the police saw.

## The Untimely Request for Relief

Appellant's trial counsel did not object (1) immediately after those comments were made, (2) at the conclusion of rebuttal argument, or (3) at any time before the jurors were instructed to recess for lunch and be back in the jury room to begin their deliberations at 2:00 p.m.. At some point during the luncheon recess, however, appellant's trial counsel decided that he should complain about the above quoted portion of the rebuttal, so he placed a telephone call to the judge's chambers. When no one answered the telephone, he left a message on the judge's voice mail, but the jurors had been deliberating for over one hour by the time appellant's counsel argued to Judge Hubbard that she should declare a mistrial because of the allegedly improper rebuttal argument. We hold that the failure to request appropriate relief at any time before the jurors left the courtroom constituted a waiver of the "improper rebuttal argument" objection.

This Court has expressed a preference "that the objection be invoked at the time the supposedly objectionable comments are made." *Curry v. State,* 54 Md.App. 250, 256, 458 A.2d 474 (1983). In that case, however, because (1) defense counsel's objections were interposed as soon as the prosecutor's argument was over, and (2) the jurors were still in the jury box when the requests for relief were placed on the record, we rejected the State's contention "that the defense objections were not timely since counsel waited until the prosecutor completed his argument before they interposed those objections." *Id.* at 256, 458 A.2d 474. Nothing in that case suggests that an appellate court must consider objections to argument of counsel that were not presented to the trial judge until after the jurors left the courtroom.

Md. Rule 4–325(e) requires that objections to jury instructions be made "promptly after the court instructs the jury."

It is at least as important that counsel object promptly to allegedly improper argument. This case is a classic example of the logistical problems involved in (1) reassembling everyone whose presence is required before the problem can be addressed, (2) hearing from counsel at a point in time when the comments at issue, and tone of voice with which they were delivered, are fresh in everyone's mind,(3) resolving the issue of what—if anything—should be done under the circumstances, and (4) returning the jurors to the jury box soon enough for the trial court to "strike while the iron is hot."

We shall continue to hold that objections to improper argument are timely if interposed either (1) immediately after the allegedly improper comments are made, or (2) immediately after the argument is completed. We shall decline, however, requests to review "improper argument" objections that were not presented to the trial judge until after the jurors have been excused from the courtroom. In this case, as no objection was interposed at any time before Judge Hubbard excused the jurors from the courtroom, appellant's "improper rebuttal argument" issue has not been preserved for our review.

We are also persuaded that, because appellant's trial counsel did not object to comments about appellant's silence made during the prosecutor's closing argument, any erroneous response to similar comments during rebuttal would be harmless beyond a reasonable doubt. Moreover, in this case the defense chose to argue that the investigating officers simply bought into the "first" explanation they received. The State was entitled to respond to that argument by showing that the officers received no other explanation. If his trial counsel had interposed an objection either (1) immediately after the "no explanation" comments were made, or (2) immediately after the rebuttal argument concluded, appellant would have been entitled to a limiting instruction that protected him from the remote possibility that the jurors would make improper use of his post-arrest silence. At no point, however, was appellant entitled to a mistrial.

546

JUDGMENTS AFFIRMED; APPELLANT TO PAY THE COSTS.