718 A.2d 211

**Robert GRIER**

v.

**STATE of Maryland.**

**No. 91 Sept. Term, 1997.**

Court of Appeals of Maryland.

Sept. 23, 1998.

242

Arthur A. DeLano, Jr., Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Mary Ann Ince, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

Raker, Judge.

Petitioner Robert Grier was convicted before the Circuit Court for Baltimore City with the crimes of attempted robbery with a deadly weapon, mayhem with intent to disfigure, and other related offenses. At trial, the State elicited evidence of Petitioner's post-arrest silence, and Petitioner entered a general objection. We consider three issues in this case. First, we consider whether a general objection to the admission of evidence of Petitioner's post-arrest silence was sufficient to preserve the issue for appellate review. Second, we consider whether evidence of Petitioner's post-arrest silence was admissible as "fair response" to the defense theory of the case. Finally, if we find error, was the admission of evidence of Petitioner's post-arrest silence harmless error.

We shall hold that because the State's questions did not generate any admissible evidence, a general objection was sufficient to preserve the issue for appellate review. Petitioner's post-arrest silence was not admissible as "fair response." Finally, the trial court's error admitting evidence of post-arrest silence was not harmless. Accordingly, we shall reverse the Court of Special Appeals.

## I.

While on patrol, two Baltimore City police officers observed Robert Grier (Petitioner) and Carl Mack struggling with each other in the middle of the street. While the officers were turning their vehicle around, Grier and Mack stopped struggling, and Grier started to walk away. Grier was carrying a camera case. The officers noticed that Mack had a deep cut on his left hand, and that he was hysterical. Officer Farley remained on the scene and spoke with Mack, who told the officer that Grier had attacked him and stolen his backpack. Officer Purtell followed Grier. Officer Purtell stayed 20 feet behind Grier both for safety reasons and because he did not want to approach Petitioner "right off the bat" until he "knew what was going on." After calling an ambulance for Mack, Officer Farley also followed in pursuit of Grier. Officer Farley observed Grier walk into a dead-end alley and throw something onto a porch. As Grier came out of the alley, the officers "got him and put him on the ground and then took him into custody."

Grier was tried before a jury in the Circuit Court for Baltimore City. He was convicted of attempted robbery with a deadly weapon, in violation of Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.) Article 27, § 488; statutory maiming, in violation of Maryland Code (1957, 1992 Repl.Vol.) Article 27, § 385 [1]; and other related offenses.

At trial, defense counsel told the jury in opening statement:

---

1. Defendant was arrested on October 26, 1995, tried on July 24–25, 1996, and sentenced on September 5, 1996. Article 27, § 385 was

Now, as the prosecutor has said, you will hear from a number of witnesses, two police officers and Mr. Mack, the infamous Mr. Mack. . . .

Now, you will hear through these witnesses what they did, at least the police officers, what they did by way of investigation, what they didn't do by way of investigation, and you will also find testimony from these witnesses to be lacking. You will find the physical evidence to be lacking.

Officer Farley, the State's first witness, testified to his observation of the struggle, his questioning of Mack, and his subsequent pursuit of Grier.

OFFICER FARLEY: When we rode by, I seen them standing right in front of each other arguing. After that point we did a U-turn and came back through. And as we did the U-turn I seen them struggling with each other. The defendant had grabbed the victim. By the time we got down there, he had let go and starting walking away.

THE STATE: When you got down there, who let go and started walking away?

OFFICER FARLEY: The defendant, I mean, yeah, the defendant let go of the victim and starting walking away from us.

THE STATE: And what happened to Mr. Mack?

OFFICER FARLEY: He was there. I had approached him and my partner went towards the defendant. I had approached Mr. Mack and I observed—

THE STATE: Was he standing, sitting, laying down, how was he?

OFFICER FARLEY: He was standing. He was holding his hand when I approached him.

THE STATE: And, what, if anything, did you see with his hand?

repealed by Acts of 1996, ch. 632, § 1, effective October 1, 1996. See Maryland Code (1957, 1996 Repl.Vol., 1997 Supp.) Art. 27, § 12 et seq.

OFFICER FARLEY: I saw blood all over his hand.

* * * * * *

THE STATE: Okay. Now, when you saw the defendant, did you see the defendant walk away?

OFFICER FARLEY: Yes, sir.

* * * * * *

THE STATE: And so what did you do? Did you leave Mr. Mack and continue on—

OFFICER FARLEY: After I called the ambulance, I left Mr. Mack to go with my partner.

THE STATE: And where did your partner go, if you know?

OFFICER FARLEY: He was walking eastbound down on 30th.

THE STATE: Your partner was walking?

OFFICER FARLEY: Well, he was walking right behind the defendant. The defendant was walking very fast.

THE STATE: And where did the defendant go, if you know?

OFFICER FARLEY: When we were going down, he attempted to go through an alley which was a dead end, and then he came back out and tried to go back down the street and that is where we got him.

* * * * * *

THE STATE: So when [Grier] came out of the alley, what, if anything, did he do next?

OFFICER FARLEY: He walked down, continued eastbound on 30th, and it looked like he had thrown something, I didn't know what happened at that time, onto a porch there, and at that time we got him and put him on the ground and then got him into custody.

THE STATE: And did anyone go back up to the porch?

OFFICER FARLEY: Yes sir, my partner did.

THE STATE: You didn't go up there?

OFFICER FARLEY: No.

THE STATE: *Did the defendant offer any explanation as to what this was about?*

DEFENSE COUNSEL: *Objection, Your Honor.*

THE COURT: *Sustained.*

THE STATE: Your Honor, may we approach?

THE COURT: Yes.

(Counsel and the defendant approached the bench and the following ensued:)

THE STATE: Judge, I believe that the question does not elicit any hearsay.

THE COURT: What does it elicit?

THE STATE: Just whether he offered an explanation or not.

THE COURT: It's as well a leading question.

THE STATE: Well, I will rephrase it.

\* \* \* \* \* \*

THE COURT: Do you expect him to give you an answer about what explanation was offered?

THE STATE: No.

THE COURT: You expect him to say no explanation?

THE STATE: Uh-huh.

THE COURT: Oh, okay. Well, you have to ask it right.

\* \* \* \* \* \*

THE STATE: *Officer, what, if any, explanation did the defendant offer to you ever why he was or why this was taking place?*

DEFENSE COUNSEL: *Objection Your Honor.*

THE COURT: *You may answer, sir.*

OFFICER FARLEY: *He didn't offer any.*

THE COURT: The Court does overrule the objection.

Grier elected not to testify at trial. He was convicted and sentenced to the Department of Corrections for twelve years for the attempted armed robbery with a deadly weapon and

fifteen years for the statutory maiming, to be served concurrently.

Petitioner noted a timely appeal to the Court of Special Appeals, contending that the trial court erred in admitting evidence of his post-arrest silence as substantive evidence of guilt. The Court of Special Appeals held that Petitioner's "general objection was insufficient to preserve the post-arrest silence issue" for review and affirmed. *Grier v. State*, 116 Md.App. 534, 542, 698 A.2d 1133, 1137 (1997). The court reasoned as follows:

> Md. Rule 5–103(a)(1) provides that the erroneous admission of evidence is not preserved for appellate review by a general objection when a specific ground is required by the applicable rule. Before the bench conference concluded, appellant's trial counsel was well aware that the fair and accurate answer to the "explanation" question would generate (1) admissible evidence of appellant's pre-arrest silence, and (2) inadmissible evidence of appellant's post-arrest silence. Under these circumstances, Md. Rule 5–105 required that appellant's trial counsel make a specific request that Judge Hubbard restrict the answer to its proper scope. The general objection was insufficient to preserve the post-arrest silence issue for our review.

*Grier*, 116 Md.App. at 542, 698 A.2d at 1137. Alternatively, the court found that the evidence of Petitioner's post-arrest silence was harmless beyond a reasonable doubt. *Id.* at 542–43, 698 A.2d at 1137. We granted Grier's petition for writ of certiorari to consider the following questions:

1. Did the Court of Special Appeals err in holding that a general objection was insufficient to preserve for appellate review the question of whether or not the trial court had erred in admitting evidence of Petitioner's post-arrest silence as substantive evidence of guilt?

2. Did the Court of Special Appeals err in holding that admission of evidence of Petitioner's post-arrest silence was harmless beyond a reasonable doubt?

## II.

■ We address first whether counsel's general objection was sufficient to preserve for appellate review the trial court's decision to admit evidence of Petitioner's silence. Petitioner argues that there was no reason for defense counsel to anticipate that the "explanation" question would generate any admissible evidence. Therefore, his general objection to the admissibility of evidence of Petitioner's post-arrest silence was sufficient to preserve the issue for appellate review. The State argues that the questioning at issue generated both admissible and inadmissible evidence. Thus, Petitioner was required to object specifically to that portion of the evidence that was inadmissible. We conclude, contrary to the Court of Special Appeals, that the questioning as to defendant's silence elicited no admissible evidence, and therefore, a general objection properly sustained the issue for appellate review.

### A.

Maryland Rule 2–517(a) provides, in pertinent part, that "[t]he grounds for [an] objection need not be stated unless the court, at the request of a party or on its own initiative, so directs." Rule 5–103(a)(1) similarly provides:

**Rule 5–103. Rulings on evidence**

(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling that admits or excludes evidence unless the party is prejudiced by the ruling, and

(1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was requested by the court or required by rule[.]

If neither the court nor a rule requires otherwise, a general objection is sufficient to preserve all grounds of objection which may exist. *See Ali v. State,* 314 Md. 295, 305–06, 550 A.2d 925, 930 (1988); *von Lusch v. State,* 279 Md. 255, 262–63, 368 A.2d 468, 472 (1977).

The State contends, and the Court of Special Appeals agreed, that Maryland Rule 5–105 required defense counsel to

limit his objection to evidence of Defendant's post-arrest silence. Rule 5–105 provides:

**Rule 5–105. Limited Admissibility.**

When evidence is admitted that is admissible as to one party or for one purpose but not admissible as to another party or for another purpose, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

As a threshold matter, we note that Rule 5–105 is inapplicable to the issue in this case. Rule 5–105 addresses the situation in which evidence is admissible only for a limited purpose. Even under the State's analysis, i.e., that the question asked of the police officer generated admissible evidence of pre-arrest silence and inadmissible evidence of post-arrest silence, Rule 5–105 is inapplicable.

Rule 5–105 applies when evidence is admissible for a limited purpose. For example, Rule 5–105 is implicated when "other crimes" evidence is admitted for the limited purpose of proving defendant's intent or motive, and not for the purpose of proving propensity for criminal conduct. *See* Rule 5–404. In that circumstance, a court, upon defendant's request, should instruct the jury that the evidence should be used only for the limited purpose of proving intent or motive.

■ Whether a specific objection is required when a question elicits both inadmissible and admissible evidence is not addressed by the Maryland Rules of Evidence. Because we conclude that the question in this case elicited no admissible evidence, we need not address this issue. When a question elicits no admissible evidence, a general objection is sufficient to preserve the question of admissibility for appeal. *See Ali v. State*, 314 Md. 295, 305–06, 550 A.2d 925, 930 (1988).

### B.

Both the State and Petitioner agree that the question— "What, if any explanation did the defendant offer to you ever why he was or why this was taking place?"—elicited evidence

of Petitioner's post-arrest silence. They disagree as to whether the questioning also elicited admissible evidence of Petitioner's pre-arrest silence. The State argues that there was a period of initial questioning and detention of Grier that generated admissible evidence of Grier's pre-arrest silence. The State maintains that "[a]fter Grier exited the dead-end alley and began to go back down the street, he was stopped for questioning by Officers Farley and Purtell."

■ Officer Farley's testimony contradicts this characterization of the events. Officers Farley and Purtell never stopped Grier for a period of initial questioning. After Grier came out of the dead-end alley, the officers immediately arrested him. The officers pursued Grier, "got" him, and put him on the ground. Once Petitioner was on the ground and in the custody and control of the police officers, he was certainly under arrest. *See Bouldin v. State,* 276 Md. 511, 515–16, 350 A.2d 130, 133 (1976). Although Officer Farley may have had the right simply to detain and question Petitioner before placing him in custody, he did not do so.

Because there was no initial investigatory detention, any evidence of "pre-arrest silence" necessarily would have occurred during the time that the police officers pursued Petitioner. Although Petitioner was technically "silent" during this period, this pre-arrest silence was not admissible as substantive evidence of guilt.

■ Evidence of a person's silence is generally inadmissible because "[i]n most circumstances silence is so ambiguous that it is of little probative force." *United States v. Hale,* 422 U.S. 171, 176, 95 S.Ct. 2133, 2136, 45 L.Ed.2d 99 (1975). We have recently reaffirmed that silence is considered probative and admissible as substantive evidence of guilt if it amounts to a tacit admission, that is, if it is in response to an assertion which the party would, under all circumstances, naturally be expected to deny. *Key–El v. State,* 349 Md. 811, 817, 709 A.2d 1305, 1307 (1998). *See also Younie v. State,* 272 Md. 233, 244, 322 A.2d 211, 217 (1974); *Miller v. State,* 231 Md. 215, 218, 189 A.2d 635, 636 (1963); *Ewell v. State,* 228 Md. 615, 618–19, 180

A.2d 857, 859–60 (1962); McCormick on Evidence § 160, at 648 (J. Strong, ed., 4th ed.1992). Accordingly, we have held that prearrest silence may be admissible as substantive evidence of guilt, on a case-by-case basis, when it amounts to a tacit admission. *Key–El,* 349 Md. at 818–19, 709 A.2d at 1308.

In the instant case, however, there is no tacit admission because, quite simply, there was no accusation to deny. Before Petitioner was taken into custody, Officers Purtell and Farley did not accuse Petitioner of any criminal conduct, nor did they question Petitioner as to what had happened. They were at least twenty feet behind Petitioner as they pursued him.[2]

The State argues that even in the absence of an accusation, Petitioner's failure to come forward and tell the officers his version of events constitutes pre-arrest silence. According to the State, the natural response of an innocent person in Grier's shoes would be to speak out and tell the police his story at the time of the crime.[3] Thus, the State seeks to expand the notion of admissible "pre-arrest silence" beyond tacit admissions to include a defendant's mere failure to tell the police his version of the events in question.

We reject the notion that a person's failure to come forward and tell the police his or her version of events constitutes pre-arrest silence such that it is admissible as substantive evidence of guilt. Such evidence carries little or no probative value. Further, any minimal amount of proba-

---

**2.** According to Officer Farley's testimony, Petitioner "started walking away" when police arrived on the scene and was "walking very fast." Petitioner's "flight" from the scene was before the jury and was admitted to show consciousness of guilt. *Briggeman v. Albert,* 322 Md. 133, 137–38, 586 A.2d 15, 17 (1991); *Huffington v. State,* 295 Md. 1, 16, 452 A.2d 1211, 1218 (1982).

**3.** During oral argument, the State argued:
I think that it would be reasonable for a person to say, get him; he tried to steal my goods, leave me alone or some comment, but the fact that he didn't is the pre-arrest [silence].

tive value is substantially outweighed by the danger of unfair prejudice.

 Silence under these circumstances differs significantly from a tacit admission, which this Court has found in some situations to be probative evidence of guilt. To qualify as a tacit admission, pre-arrest silence first must meet the threshold requirements set out by the Court in *Henry v. State,* 324 Md. 204, 241, 596 A.2d 1024, 1043 (1991), and reaffirmed in *Key–El v. State,* 349 Md. 811, 817, 709 A.2d 1305, 1307 (1998):

> In order for the other's statement to be considered the party's tacit admission, the following prerequisite must be satisfied: (1) the party heard and understood the other person's statement; (2) at the time, the party had an opportunity to respond; (3) under the circumstances, a reasonable person in the party's position, who disagreed with the statement, would have voiced that disagreement. The party must have had first-hand knowledge of the matter addressed in the statement.

(*quoting* L. MCLAIN, MARYLAND EVIDENCE, § 801(4).3, at 312–13 (1987)). We noted in *Key–El* that these prerequisites ensure to some extent that a defendant's pre-arrest silence is probative of guilt before admitted into evidence.

The premise underlying the tacit admission rule is that silence in the face of an accusation is probative of guilt, because a false accusation " 'would naturally rouse the accused to speak in his or her defense.' " *Key–El v. State,* 349 Md. at 817, 709 A.2d at 1307 (quoting *Henry v. State,* 324 Md. 204, 241, 596 A.2d 1024, 1043 (1991)). In the absence of an accusation, a defendant's failure to come forward does not constitute an admission, and lacks probative value. Citizens ordinarily have no legal obligation to come forward to the police. *See Davis v. State,* 344 Md. 331, 335, 686 A.2d 1083, 1085 (1996). Failure to come forward to the police may result from numerous factors, including a belief that one has committed no crime, general suspicion of the police, or fear of retaliation. *See, e.g., People v. DeGeorge,* 73 N.Y.2d 614, 543 N.Y.S.2d 11, 541 N.E.2d 11, 13 (1989). Such silence is simply

not probative as substantive evidence of guilt. It is thus inadmissible in the State's case-in-chief.

*Jenkins v. Anderson,* 447 U.S. 231, 100 S.Ct. 2124, 65 L.Ed.2d 86 (1980), does not compel a different result. *Jenkins* involved a defendant's pre-arrest silence that was used to impeach his trial testimony, not used as substantive evidence of his guilt. In *Jenkins,* the Supreme Court concluded that the trial court's admission of evidence of the defendant's failure to come forward with his version of events did not violate the defendant's Fifth or Fourteenth Amendment rights. *Id.* at 238–39, 100 S.Ct. at 2129. At trial, the defendant testified that he had killed the victim in self-defense. *Id.* at 233, 100 S.Ct. at 2126. The prosecutor, in cross-examination and closing, emphasized that the defendant had not waited at the scene to tell the police what had happened, and had not gone subsequently to the police to tell them that he had acted in self-defense. *Id.* at 233–34, 100 S.Ct. at 2126–27. The Court held that when the defendant testified, impeachment of him with his pre-arrest silence was constitutionally permissible. *Id.* at 240–41, 100 S.Ct. at 2130. It then left to each jurisdiction "to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative," *id.* at 239, 100 S.Ct. at 2129, and to "defin[e] the situations in which silence is viewed as more probative th[a]n prejudicial." *Id.* at 240, 100 S.Ct. at 2130.

Unlike the instant case, *Jenkins* involved the use of pre-arrest silence for the purpose of impeachment—to call into question the veracity of the defendant's testimony that he had acted in self-defense. The defendant had elected to testify and thereby placed his credibility at issue. *Id.* at 238, 100 S.Ct. at 2129. The probative value of the defendant's pre-arrest silence was the inconsistency with the defendant's testimony that he acted in self-defense. *See, e.g., Commonwealth v. Bolus,* 545 Pa. 103, 680 A.2d 839, 844 (1996)(holding that evidence of the defendant's failure to come forward with his version of events was admissible to impeach defendant's testimony); *State v. Holmes,* 290 N.J.Super. 302, 675 A.2d

1125 (App.Div.1996)(stating that "[a] defendant's silence is never substantive evidence of guilt, but is admissible only to cast doubt upon the credibility of his exculpatory testimony at trial"); *State v. Buckner*, 342 N.C. 198, 464 S.E.2d 414 (1995)(determining that evidence of the defendant's failure to tell police his version of events was inconsistent with the defendant's trial testimony and admissible to impeach); *State v. Williams*, 27 Conn.App. 654, 610 A.2d 672 (1992)(holding that evidence of pre-arrest silence to impeach defendant's testimony was proper); *State v. Sabbah*, 13 Ohio App.3d 124, 468 N.E.2d 718, 731 (1982)(leaving to the trial court to determine, "on a case-by-case basis, the precise circumstances under which a defendant's pre-arrest silence, when juxtaposed to his exculpatory testimony, is so genuinely inconsistent with it that references to such silence are probative of credibility or recent fabrication"); WIGMORE ON EVIDENCE, § 1042, at 1056–58 (Chadbourn ed.1970); Annot., *Impeachment of Defendant in Criminal Case by Showing Defendant's Prearrest Silence—State Cases*, 35 A.L.R.4th 731 (1981); *But see Farley v. State*, 717 P.2d 111, 113 (Okla.Crim.App.1986)(holding that evidence of pre-arrest silence cannot be used to impeach because it does not increase the probability that a defendant's testimony is false); *People v. Conyers*, 52 N.Y.2d 454, 438 N.Y.S.2d 741, 420 N.E.2d 933, 935–36 (1981)(holding that absent unusual circumstances, evidence of pre-arrest silence is inadmissible even when offered solely to impeach); *People v. Sheperd*, 37 Colo.App. 336, 551 P.2d 210, 211–12 (1976) (holding that "[s]ilence, in the form of failing to appear voluntarily before the police and give a statement, prior to being arrested, is of such little probative value that it should not be introduced" even to impeach).[4]

---

4. This Court addressed a related question in *Davis v. State*, 344 Md. 331, 686 A.2d 1083 (1996). In *Davis*, we considered whether an alibi witness could be impeached with the fact that the witness had not previously come forward to the authorities. We held that such evidence was admissible to impeach the witness, but only *after* the trial court established that the witness's failure to report the testimony was inconsistent with his testimony at trial. We noted:

█ In this case, the State did not use evidence of Grier's silence as impeachment evidence. Instead, the State used the evidence as substantive evidence of guilt. At trial, Grier exercised his constitutional privilege against self-incrimination and elected not to testify, and therefore, evidence of his failure to come forward with his version of the incident lacked probative value. We hold that, with the exception of circumstances constituting a "tacit admission," ordinarily a defendant's failure to approach the police with his or her account prior to arrest lacks probative value, and is inadmissible evidence in the State's case-in-chief.[5]

In summary, the questioning at issue generated no admissible evidence of pre-arrest silence. There was no preliminary detention during which Petitioner was questioned about the events. Further, Petitioner could not naturally be expected to assert his innocence as police pursued him, and as a result, Petitioner's silence at that time was not a tacit admission. Finally, we soundly reject the State's argument that Petitioner's failure to come forward and tell the police his version of events was admissible as substantive evidence of guilt.

### III.

We now turn to the State's claim that evidence of Petitioner's post-arrest silence was properly admitted, or at least "not prejudicial," as fair response to defense allegations of an improper police investigation.

---

The threshold fact to be established, by way of foundation, is that the natural response of the witness, assuming the witness was in possession of exculpatory evidence, would have been to disclose that information to the proper authorities. From that fact, the inconsistency between his or her pretrial silence and his or her trial testimony may be inferred. If that burden is not satisfied "proof of silence lacks any significant probative value and must therefore be excluded." *Hale*, 422 U.S. at 176, 95 S.Ct. at 2136, 45 L.Ed.2d at 104.

*Id.* at 338, 686 A.2d at 1086 (internal citation omitted).

**5.** We do not address the question of whether a defendant's failure to come forward with his account may be used to impeach the defendant's testimony at trial.

■ Evidence of post-arrest silence, after *Miranda* warnings are given, is inadmissible for any purpose, including impeachment. *See Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976); *Miranda v. Arizona,* 384 U.S. 436, 468 n. 37, 86 S.Ct. 1602, 1624 n. 37, 16 L.Ed.2d 694 (1966). As a constitutional matter, allowing such evidence "would be fundamentally unfair and a deprivation of due process." *Doyle,* 426 U.S. at 618, 96 S.Ct. at 2245. As an evidentiary matter, such evidence is also inadmissible. *Younie v. State,* 272 Md. 233, 244, 322 A.2d 211, 217 (1974); *Miller v. State,* 231 Md. 215, 218–19, 189 A.2d 635, 636–37 (1963). When a defendant is silent following *Miranda* warnings, he may be acting merely upon his right to remain silent. *Younie,* 272 Md. at 244, 322 A.2d at 217; *Miller,* 231 Md. at 218–19, 189 A.2d at 636–37. Thus, a defendant's silence at that point carries little or no probative value, and a significant potential for prejudice. *United States v. Hale,* 422 U.S. 171, 180, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975).

The Supreme Court has held that the use of post-arrest, pre-*Miranda* silence to impeach does not violate the Fourteenth Amendment, *Fletcher v. Weir,* 455 U.S. 603, 607, 102 S.Ct. 1309, 1312, 71 L.Ed.2d 490 (1982), leaving to each state to determine the admissibility of such evidence on evidentiary grounds. Although this Court has not had occasion to consider the issue, the Court of Special Appeals has held that post-arrest, pre-*Miranda* silence is too ambiguous to be admissible, even as impeachment evidence. Judge Karwacki, writing for the Court of Special Appeals, reasoned:

[S]ince "[s]ilence may be motivated by many factors other than a sense of guilt or lack of an exculpatory story," McCormick, *Evidence,* § 270 at 800 (1984 ed.), it carries little, if any, probative value.

But "[n]ot only is evidence of silence at the time of arrest generally not very probative of a defendant's credibility, . . . it also has a significant potential for unfair prejudice." *Hale,* 422 U.S. at 180, 95 S.Ct. at 2138, 45 L.Ed.2d at 107.

*See also Younie v. State,* 272 Md. 233, 241–42, 322 A.2d 211 (1974).

*Wills v. State,* 82 Md.App. 669, 678, 573 A.2d 80, 85 (1990).

Neither the Supreme Court nor this Court has addressed the related question of whether the use of post-arrest, pre-*Miranda* silence is admissible as substantive evidence of guilt in the State's case-in-chief.[6] In the case before us, however, the State does not contend that there was a period of time, post-arrest but pre-*Miranda,* when Defendant's silence was admissible as a tacit admission of guilt.[7] The State pursues a different argument. The State contends that *any* evidence of post-arrest silence, without reference to *Miranda* warnings, was admissible as "fair response" to the defense strategy in

---

**6.** Other states have addressed this issue. Some states have excluded this evidence by construing their state constitutions as providing criminal defendants with greater protection than the federal constitution. *See, e.g., State v. Davis,* 38 Wash.App. 600, 686 P.2d 1143, 1145–46 (1984); *Commonwealth v. Turner,* 499 Pa. 579, 454 A.2d 537, 540 (1982). Others have decided the issue on evidentiary grounds, finding that post-arrest silence, regardless of whether a defendant is advised of his rights under *Miranda,* is too ambiguous to have any probative value. *See Morris v. State,* 112 Nev. 260, 913 P.2d 1264, 1267 (1996); *Commonwealth v. Ferrara,* 31 Mass.App.Ct. 648, 582 N.E.2d 961, 964 (1991); *People v. Quintana,* 665 P.2d 605, 609–11 (Colo.1983)(en banc).

Several states have recognized a policy basis to reject the position that only post-*Miranda* silence is inadmissible. Those states reason that if a defendant's silence prior to *Miranda* warnings were admissible to imply guilt, it would encourage police to delay reading *Miranda* warnings to preserve the opportunity to use the defendant's silence against him at trial, only later giving the suspect *Miranda* warnings to secure a statement. *See, e.g., Morris v. State,* 913 P.2d at 1267; *State v. Davis,* 686 P.2d at 1146.

**7.** We decline to address this issue today on our own initiative. This issue was not raised in either the petition for certiorari or the briefs of the parties. Nor was it raised in the trial court or the Court of Special Appeals. Md. Rule 8–131.

Further, we can not determine from the record before us whether there was a period of time when Petitioner was arrested and had not received *Miranda* warnings or whether Petitioner was advised at any time of his *Miranda* rights. Because we can not determine whether this period existed, we can not tell whether Petitioner demonstrated any silence during such a time period that would rise to the level of a tacit admission.

the case. According to the State, the theory of Grier's defense was that the police considered only the victim's version of events and failed to consider Grier's version or account.[8] The State argues that reference to Petitioner's failure to tell his version of events to police was admissible as "fair response" to this defense argument.

In opening statement, defense counsel stated:

Now, you will hear through these witnesses what they did, at least the police officers, what they did by way of investigation, what they didn't do by way of investigation, and you will also find testimony from these witnesses to be lacking. You will find the physical evidence to be lacking.

After opening statements, the State presented its first witness, Officer Farley, who testified to Petitioner's silence. The State argues that under the "fair response" rule articulated in *United States v. Robinson*, 485 U.S. 25, 33–34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), Petitioner's silence was admissible to explain why the police conducted such a limited investigation. We conclude that the State's evidence of post-arrest silence remained inadmissible under either the Supreme Court's "fair response" rule or the evidentiary "opening the door" doctrine.

 Under the "opening the door" doctrine, otherwise irrelevant evidence may be admitted when the opposing party has "opened the door" to such evidence. *See Conyers v. State*, 345 Md. 525, 545, 693 A.2d 781, 790 (1997); *Clark v. State*, 332 Md. 77, 84, 629 A.2d 1239, 1242 (1993). "Generally, 'opening the door' is simply a contention that competent evidence which was previously irrelevant is now relevant through the opponent's admission of other evidence on the same issue." *Clark*, 332 Md. at 85, 629 A.2d at 1243. We have described the "opening the door" doctrine as a rule of expanded relevancy that, under limited circumstances, "allows the admission of evidence that is competent, but otherwise irrelevant." *Conyers*, 345 Md. at 545, 693 A.2d at 790. We have noted,

---

8. The State did not object to the admissibility of this evidence on relevancy grounds and we express no opinion on that issue.

however, that "the 'opening the door' doctrine does not permit the admission of incompetent evidence." *Id.* at 546, 693 A.2d at 791. Incompetent evidence refers to evidence that is inadmissible for reasons other than relevancy. *Clark,* 332 Md. at 87 n. 2, 629 A.2d at 1244 n. 2. We held in *Clark v. State,* 332 Md. 77, 87, 629 A.2d 1239, 1244 (1993), that the defense's incompetent hearsay evidence was inadmissible to neutralize the State's prejudicial testimony. Similarly, in the instant case, the State's evidence of Grier's post-arrest silence was incompetent, not merely irrelevant. Consequently, it is not admissible under the "opening the door" doctrine.

The State argues that the evidence was admissible under the Supreme Court's "fair response" rule. Reasoning that the prosecution's comment on the defendant's refusal to testify is a penalty imposed upon the defendant for exercising a constitutional privilege, the Supreme Court held in *Griffin v. California,* 380 U.S. 609, 615, 85 S.Ct. 1229, 1233, 14 L.Ed.2d 106 (1965):

> [T]he Fifth Amendment, in its direct application to the Federal Government, and in its bearing on the States by reason of the Fourteenth Amendment, forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt.

In *United States v. Robinson,* 485 U.S. 25, 33–34, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988), the Court declined to extend *Griffin* to preclude a prosecutor from fairly responding to an argument by the defendant, and held that the prosecutor's comment on the defendant's silence did not violate the Fifth Amendment. During closing argument at Robinson's trial, defense counsel repeatedly claimed that the government unfairly had denied the defendant the opportunity to explain his actions. *Id.* at 27, 108 S.Ct. at 866. In his rebuttal summation, the prosecutor stated that the defendant had many opportunities, including testifying at trial, to explain his conduct. *Id.* at 28, 108 S.Ct. at 867. The Court first noted that "the prosecutorial comment did not treat the defendant's silence as substantive evidence of guilt, but instead referred to

the possibility of testifying as one of several opportunities which the defendant was afforded, contrary to the statement of his counsel, to explain his side of the case." *Id.* at 32, 108 S.Ct. at 869. Analyzing the constitutionality of the State's comment upon defendant's failure to take the stand, the Court concluded:

> It is one thing to hold, as we did in *Griffin,* that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would prohibit the prosecutor from fairly responding to an argument of the defendant by adverting to that silence.... [W]e decline to expand *Griffin* to preclude a *fair response* by the prosecutor in situations such as the present one.

*Id.* at 34, 108 S.Ct. at 870 (emphasis added).

■ We consider the evidence in context to determine whether the State's comments constituted a fair response to a defense argument. At the time the State introduced evidence of post-arrest silence, Petitioner had said nothing to generate a response by the State. Petitioner merely asked the jurors to pay close attention to the police officers' investigation. Defense counsel's comments cannot be construed as justification for the State's evidence. We conclude that evidence of post-arrest silence was not admissible under the doctrine of fair response.

## IV.

We now examine whether the trial court's failure to sustain the objection was harmless error. The State points to testimony of Mack's injuries, Grier's flight from the scene, and Grier's attempted disposal of a knife. The fact that Grier never offered an explanation to the police, the State concludes, was inconsequential. Petitioner contends that the prosecution's vigorous pursuit of that line of questioning, and the

prosecution's reliance upon it in closing, prejudiced the defense.

In its initial closing argument, the State commented:

Officer Farley, did you at any time receive—or what, if any, explanation did the defendant offer you in regard to this incident? Officer Farley, he had nothing to say.

In rebuttal closing, the State argued:

And when he was caught, he offered no reason, nothing. He had nothing to say to the police, nothing to say at all. Not yeah, yeah, that guy attacked me. There was nothing. There was nothing. And all he had to do was give an explanation like Mr. Mack did over what happened and the details of what happened and let them jive with what the police saw.

The State improperly used Petitioner's failure to explain his version of events as substantive evidence of guilt. An error is not harmless unless, upon an independent review of the record, a reviewing court is able to declare beyond a reasonable doubt that the error in no way influenced the verdict. *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976). The prejudice to a defendant resulting from reference to his silence is often substantial. As the Fifth Circuit observed, "[w]e would be naive if we failed to recognize that most laymen view an assertion of the Fifth Amendment privilege as a badge of guilt." *Walker v. United States,* 404 F.2d 900, 903 (5th Cir.1968). Silence at the time of arrest "has a significant potential for unfair prejudice." *United States v. Hale,* 422 U.S. 171, 180, 95 S.Ct. 2133, 2138, 45 L.Ed.2d 99 (1975). We cannot conclude that the error was harmless beyond a reasonable doubt.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AND REMAND THE CASE TO THE CIRCUIT COURT FOR A NEW TRIAL; COSTS IN THIS COURT AND IN THE*

COURT OF SPECIAL APPEALS TO BE PAID BY THE
MAYOR AND CITY COUNCIL OF BALTIMORE.